UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

ROBIN D. SLIGER,

Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

Defendant.

No. 3:20-CV-011-JDB-HBG

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Judge of Plaintiff's Motion for Summary Judgment [Doc. 16] and the Commissioner's Motion for Summary Judgment [Doc. 18].

Plaintiff Robin Sliger seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner").[1] For the reasons that follow, the Court will **RECOMMEND** that Plaintiff's Motion for Summary Judgment [Doc. 16] be **DENIED** and the Commissioner's Motion for Summary Judgment [Doc. 18] be **GRANTED**.

## I. PROCEDURAL HISTORY

On May 22, 2017, Plaintiff protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*., claiming a period of

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

disability that began on October 15, 2016. [Tr. 11, 157, 185]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 98–99]. A hearing was held on August 30, 2018. [Tr. 29–48]. On December 3, 2018, the ALJ found that Plaintiff was not disabled. [Tr. 8–28]. The Appeals Council denied Plaintiff's request for review on November 6, 2019 [Tr. 1–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on January 7, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The claimant has not engaged in substantial gainful activity since October 15, 2016, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> 3. The claimant has the following severe impairments: anxiety disorder, fibromyalgia, and arthritis (20 CFR 404.1520(c)). Otherwise, the claimant has the following non-severe impairments: hypertension and chronic pulmonary obstructive disease (COPD).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: occasionally climb ramps or stairs; occasionally stoop, kneel, crouch or crawl; never climb ladders, ropes, or scaffolds; can frequently perform fine and gross manipulation with the upper extremities, bilaterally; and can have no contact with the general public.

> 6. The claimant is capable of performing past relevant work as a driving instructor and office manager (clerical) (Exs. B2E, p.3; B3E; B12E; hearing testimony). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from October 15, 2016, through the date of this decision (20 CFR 404.1520(f)).

[Tr. 13–23].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762,

773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

> in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to afford appropriate weight to the opinion of her treating physician, Jenny M. Byrd, M.D., as well as failed to reconcile the RFC finding with the favorably weighed opinion of consultative examiner, Charles Martin, Ph.D.

### A. ALJ's Treatment of Dr. Byrd's Opinion

Plaintiff challenges the ALJ's evaluation of the opinion of her treating physician, Dr. Byrd. Plaintiff began treatment with Dr. Byrd for her pain and depression on December 31, 2015. [Tr. 304]. Plaintiff details that she was also seen by Dr. Byrd on March 29, 2016 [Tr. 300], June 30, 2016 [Tr. 295], October 3, 2016 [Tr. 291], January 3, 2017 [Tr. 284], March 28, 2017 [Tr. 276], May 30, 2017 [Tr. 271], September 19, 2017 [Tr. 322], and January 18, 2018 [Tr. 409].

Dr. Byrd completed a medical source statement on April 30, 2018. [Tr. 400]. Dr. Byrd listed Plaintiff's impairments as seronegative arthritis, fibromyalgia, chronic fatigue, recurrent major depression, and COPD. [*Id.*]. First, Dr. Byrd indicated that Plaintiff could not reasonably be expected to be reliable in attending an eight-hour day, and forty-hour work week, without missing more than two days per month. [*Id.*]. Next, Dr. Byrd opined that Plaintiff could sit for six total hours; stand for forty-five minutes total and five minutes at a time; and walk for forty-five minutes total and five minutes at a time in an eight-hour workday. [*Id.*]. Dr. Byrd assessed that Plaintiff could occasionally lift up to five pounds, but that she could never lift over five pounds due to her seronegative arthritis. [*Id.*]. Additionally, Dr. Byrd found that Plaintiff could never bend, push/pull, or use her hands for gross or fine manipulation. [*Id.*].[2] Dr. Byrd assessed that

[2] Dr Byrd assessed that Plaintiff would have a reasonable medical need to lie down for approximately 240 minutes/hours per day, as well as 7 times per day/week, while failing to indicate

Plaintiff would have to take four or more unscheduled breaks per day. [Tr. 401].

Further, Dr. Byrd found that Plaintiff would have environmental limitations related to humidity, temperature extremes, and vibrations; that she would have the need to urinate with such frequency that it would be impossible to fit the need to void into normal breaks; that she goes to the bathroom an average of more than twelve times in a twenty-four hour period; and that she would be expected to experience urinary incontinence at least one or more times a day. [*Id.*]. Lastly, Dr. Byrd indicated that objective evidence supporting her opinions existed in her treatment notes—although she failed to identify any specific evidence—as well as that the opinion was supported by taking a proper medical history, physical exams, and clinical observations. [Tr. 402].

In the disability decision, the ALJ reviewed Dr. Byrd's opinion, first misstating it as the opinion of a consultative examiner. [Tr. 21]. Next, the ALJ found that Dr. Byrd's opinion that Plaintiff suffers from seronegative arthritis, fibromyalgia, recurrent major depression, and COPD was persuasive, as it was consistent with the medical records showing these conditions as medically determinable impairments. [*Id.*]. However, the ALJ was not persuaded that these conditions were all severe, as Plaintiff's depression was described as in "partial remission," "stable," and "resolved," as well as that pulmonary testing revealed no significant findings. [*Id.*]. Therefore, the ALJ found that Plaintiff's anxiety was severe, due to her current symptoms of panic and social anxiety, but that her COPD was non-severe, due to the fact that there was no evidence of significant limitations attributed to this condition. [*Id.*].

The ALJ then noted that Plaintiff's "treatment records generally show that despite evidence

---

the frequency used for this estimation. [Tr. 401]. Similarly, Dr. Byrd opined that Plaintiff would need to elevate her legs fifteen times a day/week for five minutes/hour, while failing to indicate the frequency used for this estimation. [*Id.*].

of joint pain and fatigue . . . [her] physical examinations are generally benign." [*Id.*]. Therefore, the ALJ was unpersuaded by Dr. Byrd's opinion that Plaintiff could not be reasonably expected to be reliable in attending an eight-hour day, 40 hour work week, without missing two days per month in view of the degree of pain, fatigue, or other limitation, as it was inconsistent with the longitudinal record. [*Id.*]. Further, the ALJ found that the opinion of state agency medical consultant, Reeta Misra, M.D., that Plaintiff should be restricted to a light exertional level was consistent with the normal examination findings, taking into account Plaintiff's symptoms of joint pain and fatigue. [*Id.*]. Accordingly, the ALJ was persuaded by Dr. Misra's opinion as it was supporting with restricting Plaintiff to a light exertional level. [*Id.*].

Since Plaintiff's claim was filed after March 27, 2017, the Social Security Administration's new regulations for evaluation of medical opinion evidence apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. § 404.1520c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and



Case 3:20-cv-00011-JDB-HBG Document 21 Filed 07/22/21 Page 8 of 20 PageID #: 529

evidentiary requirements. 20 C.F.R. §§ 404.1520(a), (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520(c)(b)(2).

Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
>
> **(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;
>
> **(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021). Additionally, the Revised Regulations explain, "[a] prior administrative medical finding is a finding, other than the ultimate determination

about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review . . . in [a claimant's] current claim based on their review of the evidence in [the claimant's] case record[.]" 20 C.F.R. § 404.1513(a)(5).

Plaintiff claims that the ALJ's rationale for discounting Dr. Byrd's opinion is not supported by substantial evidence, as "no evidence is pointed to in particular that would elevate the non-examining opinion here over a long time treating physician." [Doc. 17 at 12]. Plaintiff notes the ALJ's citation to "positive examination findings throughout the discussion, including decreased motion in her neck, tight trapezius muscles, thickening fingers, diffuse tender points; and that she continued to suffer symptoms of pain, fatigue and stiffness particular in her upper extremities." [*Id.*]. Further, Plaintiff cites the alleged significant findings throughout her examinations with Dr. Byrd. As such, Plaintiff asserts that it is unclear what benign findings the ALJ relied upon to discount Dr. Byrd's opinion, that Dr. Byrd noted that her opinion was based on objective evidence, and that Plaintiff's pain was caused by her fibromyalgia which "would not necessarily benefit from objective imaging findings or other diagnostic studies." [*Id.* at 14].

The Commissioner responds that the ALJ identified physical examination findings that were inconsistent with Dr. Byrd's opinion, as well as discussed Plaintiff's daily activities that were inconsistent with disabling limitations, and therefore the ALJ's treatment of Dr. Byrd's opinion was supported by substantial evidence. [Doc. 19 at 7–9].

As stated above, the treating physician rule is not applicable in Plaintiff's case, as the ALJ was instead tasked with considering how persuasive the medical opinions of record were. Ultimately, while Plaintiff claims that "Dr. Byrd's opinion was highly consistent with and supported by her own treatment notes, the nature of the illnesses, and the objective evidence of

record" [Doc. 17 at 14], the Court finds that the ALJ properly considered the supportability and consistency of the medical opinions of record, and summarized how Dr. Byrd's opinion was inconsistent with the medical record.

Earlier in the disability decision, the ALJ reviewed the medical records related to Plaintiff's history of fibromyalgia and arthritis. [Tr. 18]. For example, the ALJ stated that "[m]edical records document the claimant's arthritis and fibromyalgia symptoms to include swelling, left lateral sacral iliac pain, neck pain, and chronic fatigue;" as well as that that Plaintiff was "specifically assessed as having seronegative arthritis which produces her 'chronic pain' symptoms." [*Id.*]. Additionally, the ALJ cited to Plaintiff's September 19, 2017 and March 29, 2016 treatment records with Dr. Byrd to "show a decreased range of motion in her neck, tight trapezius muscles, thickening fingers, and diffuse tender points." [*Id.*]; *see* [Tr. 357, 371]. The ALJ cited to Plaintiff's 2018 treatment records with Dr. Byrd which "show the claimant continues to suffer symptoms of pain, fatigue and stiffness particularly in her upper extremities." [Tr. 18]; *see* [Tr. 403–12].

However, the ALJ also found that "objective studies and physical examinations reveal no extraordinary findings that would impose significant limitations on the claimant's physical functioning, prohibitive of performing basic work activities." [Tr. 18]. First, the ALJ cited to a December 5, 2017 pulmonary function test with a bronchodilator which revealed no significant findings. [*Id.*]. Next, in relevant part, the ALJ found that Plaintiff's "physical examinations are generally benign." [*Id.*]. The ALJ assessed that "despite evidence of joint pain, stiffness and fatigue, the claimant's cardiovascular examinations are normal; her extremity examinations show no clubbing, cyanosis or edema; [and] musculoskeletal examinations [are] normal and nontender to palpation." [*Id.*]. Therefore, the ALJ found that "even given the severity of the claimant's condition and symptoms inclusive of upper extremity pain and stiffness, particularly in the hands,

neck pain, joint pain, and fatigue, the total record supports [a] finding that she is not prohibited from all physical activity." [*Id.*].

"Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021). However, an ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009).

While solely stating that Plaintiff's physical examinations were benign could be conclusory, the ALJ proceeded to summarize that Plaintiff's cardiovascular examinations were normal, her extremity examinations showed no clubbing, cyanosis, or edema, and musculoskeletal examinations were normal and nontender to palpation. In support, the ALJ cited to a January 3, 2017 treatment note with Dr. Byrd [Tr. 288] noting no murmur rub or gallop upon a cardiovascular examination, no clubbing cyanosis or edema in Plaintiff's extremities, and joint changes in hands but no active synovitis and multiple paired tender points. The ALJ cited to October 3, 2016 [Tr. 293] and June 30, 2016 [Tr. 297] treatment notes with Dr. Byrd reflecting similar findings, although the June 30th treatment note reflected mild degenerative changes, especially in the hands, with a few trigger points on the upper and lower body. Similarly, the ALJ cited to a March 29, 2016 treatment note with similar cardiovascular and extremities findings but noting mild degenerative changes in Plaintiff's right hand with increased synovitis [Tr. 302].

The ALJ also found that Dr. Misra's opinion was consistent with the generally normal examination findings, taking into consideration Plaintiff's symptoms of joint pain and fatigue. [Tr. 21]. Dr. Misra reviewed the evidence of record at the reconsideration level of the agency's review

on December 23, 2017 and found that Plaintiff's severe impairments included inflammatory arthritis, fibromyalgia, depressive, bipolar and related disorders, and anxiety and obsessive-compulsive disorders. [Tr. 79]. Dr. Misra opined that Plaintiff had the RFC to occasionally lift and/or carry twenty pounds, frequently lift and/or carry ten pounds, stand for about six hours in an eight-hour workday, and sit for about six hours in an eight-hour workday. [Tr. 82]. Dr. Misra found that Plaintiff was unlimited in her ability to push and/or pull, except for the lifting limitations, as well as that Plaintiff could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl—but that she could never climb ladders, ropes, or scaffolds. [Tr. 82–83]. Lastly, Dr. Misra assessed that Plaintiff was unlimited in her ability to reach and feel, that she was limited on the right for gross and fine manipulation, and that she was limited to frequent handling and fingering bilaterally. [Tr. 83].

Ultimately, the Court finds that the ALJ appropriately considered Dr. Byrd's opinion and explained her consideration of the consistency and supportability factors. The ALJ found that the opinion was inconsistent with Dr. Byrd's treatment notes, summarized the finding of these treatment notes with citations to the record, and also found that Dr. Misra's opinion was more persuasive. Therefore, the ALJ identified specific evidence that was inconsistent with Dr. Byrd's assessed disabling limitations. *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("No doubt, the ALJ did not reproduce the list of these treatment records a second time when she explained why Dr. Bell's opinion was inconsistent with this record. But it suffices that she listed them elsewhere in her opinion.") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014)). As detailed above, 20 C.F.R. § 404.1520c(a) abrogates the treating physician rule and states that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including

those from your medical sources." *See Merrell v. Comm'r of Soc. Sec.*, No. 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021) (noting that, under § 404.1520c, "[t]he ALJ was not required to give any specific weight or deference to [the medical source]'s opinions").

Although Plaintiff would interpret the medical evidence differently, the Court finds that the ALJ's determination was within her "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant) (quotations omitted); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings."). Additionally, the ALJ was not required to articulate how she considered the remaining factors, as she did not find two medical opinions about the same issue equally well-supported and consistent with the record. 20 C.F.R. § 404.1520c(b)(3). Ultimately, the Court finds that the ALJ's discussion of the medical record and Dr. Byrd's opinion satisfied the articulation requirements under the revised regulations, and that the ALJ's supportability and consistency analysis was supported by substantial evidence.

**B. ALJ's Treatment of Dr. Martin's Opinion**

Plaintiff asserts that the ALJ improperly failed to explain why she did not adopt a limitation in following and remembering directions and instructions, despite finding Dr. Martin's opinion persuasive. Plaintiff maintains that the ALJ failed to reconcile her "finding Dr. Martin's opinion persuasive and not including limitations [on] following and remembering directions and

instructions." [Doc. 17 at 16]. Lastly, Plaintiff asserts that "Dr. Martin's opinion regarding anxiety is highly supported, and the ALJ's RFC and hypothetical to the vocational expert are unsupported by substantial evidence as the VE never responded to a hypothetical where Plaintiff would have trouble with directions and instructions." [*Id.* at 18].

The Government responds that "[w]hile the ALJ found Dr. Martin's overall opinion persuasive with regard to most of her work-related abilities, it was not necessary for the ALJ to include each and every limitation set forth by this doctor." [Doc. 19 at 10].

Dr. Martin, in connection with Ann M. Ramey, M.S., consultatively examined Plaintiff on June 4, 2018. [Tr. 394].[3] Dr. Martin performed an intake interview, a clinical interview, and a mental status examination. [*Id.*]. Plaintiff reported that her mental health issues included bipolar disorder with depression and anxiety and difficulty with concentration. [Tr. 395]. Dr. Martin reviewed Plaintiff's reported mental health history, including stemming from her father's suicide on December 25, 2012. [*Id.*]. Additionally, Dr. Martin reviewed Plaintiff's background, education, work history, and reported daily activities. [Tr. 396–97]. On examination, Dr. Martin noted that Plaintiff's hair was somewhat disheveled, she made fairly good eye contact except at first when she was very anxious and shaking, and that her insight, judgment, and reasoning appeared to be stable during the office visit. [Tr. 397]. Dr. Martin stated that Plaintiff's memory for recent and remote events to time, dates, and places appeared to be adequate, as well as that Plaintiff responded to all of the items on the mental status examination, although she initially claimed that she was anxious. [Tr. 398]. On the mental status examination, Plaintiff was able to

---

[3] Ms. Ramey, a licensed senior psychological examiner, authored the report, and Dr. Martin, a licensed psychologist, reviewed the report and concurred with its findings. [Tr. 399]. Therefore, as used by the parties, the Court will refer to the report as Dr. Martin's opinion.

recall one out of three unrelated words in three to five minutes; completed serial 3's and 7's with no errors; successfully completed all four simple mathematical computations using money; knew three out of the last four presidents; and was oriented to person, place, time, day, and date. [*Id.*].

Dr. Martin diagnosed bipolar disorder, type I, as well as generalized anxiety disorder. [*Id.*]. Dr. Martin noted that Plaintiff reported a long history of depression with mood swings, a diagnosis of bipolar disorder for which she was currently being treated, and mostly being treated for depression. [*Id.*]. Dr. Martin stated that Plaintiff was very anxious during the interview, although she calmed down and was cooperative in the mental status examination. [*Id.*]. Additionally, Dr. Martin assessed that Plaintiff's cognitive abilities appeared to be average to above average commensurate with her educational history; and that she had a minimal work history, was unable to follow through with social anxiety, fears, and was unable to deal with the public in general. [*Id.*]. Dr. Martin detailed that Plaintiff claims to isolate herself and not be involved in social activities outside of her home, although she stays in contact with her family. [*Id.*]. Dr. Martin indicated that Plaintiff's memory for the past on the mental status examination was excellent and there did not appear to be problems regarding concentrating and focusing on the interview or examination. [*Id.*].

Therefore, Dr. Martin opined that Plaintiff had no difficulty understanding and remembering simple instructions and cognitively would not have difficulty with complex instructions. [Tr. 399]. Additionally, Dr. Martin found that Plaintiff did not appear to have difficulty making judgments in simple work-related decisions or complex work-related decisions with regard to cognitive abilities. [*Id.*]. However, Dr. Martin opined that Plaintiff had "moderate difficulty interacting appropriately with the public and would be with supervisors and co-workers on the social as well as work-related basis." [*Id.*]. Lastly, Dr. Martin assessed that "[f]ollowing

instructions, remembering instructions and directions would be impaired as noted by her anxiety," but that Plaintiff had "the cognitive ability to respond appropriately to usual work situations as well as changes in the routine work settings." [*Id.*].

In the disability decision, the ALJ noted that Dr. Martin was a licensed psychologist in the area of clinical psychology, and a specialist in the field, who diagnosed Plaintiff with bipolar disorder type 1 and generalized anxiety disorder. [Tr. 20]. However, the ALJ found that while the record shows that Plaintiff had anxiety disorder, evidence of a bipolar disorder was seemingly self-reported, and thus the ALJ was persuaded by Dr. Martin's opinion that Plaintiff has severe anxiety disorder and unpersuaded by his opinion of bipolar disorder, while noting the record reflects depression disorder. [*Id.*]. Additionally, the ALJ reviewed Dr. Martin's opinions on limitations stemming from Plaintiff's mental impairments, including that "[f]ollowing instructions, remembering instructions and direction would be impaired as noted by her anxiety." [*Id.*]. Here, the ALJ discussed Dr. Martin's assessments, stating:

> The undersigned is persuaded by Dr. Martin's opinion which is consistent with the record showing no long term formalized mental health treatment or inpatient hospitalizations—suggestive of a more severe mental impairment and greater limitations. Furthermore, this opinion is consistent with treatment records showing that despite her anxiety disorder, the claimant generally presents as being alert, well oriented, having an appropriate mood and affect, no psychotic features, 'stable' insight and judgment. Importantly, Dr. Martin's opinion supports the undersigned's determination that the claimant's social anxiety warrants restricting her to having no interaction with the general public as provided by the residual functional capacity assessment.

[*Id.*].

Under the previous regulations, even if an ALJ assigned great weight to an opinion, the ALJ was not required to incorporate every opined limitation into the RFC. *See, e.g., Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 276 (6th Cir. 2015); *Poe v. Comm'r of Soc. Sec.*, 342 F.

App'x 149, 157 (6th Cir. 2009); *see Purtty v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-1204, 2014 WL 3510991, at *9 (N.D. Ohio July 10, 2014) ("[A]n ALJ is not required to explain each limitation or restriction he adopts or, conversely, does not adopt from a consultative examiner's opinion. While an ALJ must consider medical opinions, the RFC determination is expressly reserved to the Commissioner.") (internal citations omitted). Similarly, "[t]he Revised Regulations provide no basis for abandoning this precedent." *Ephraim v. Saul*, No. 1:20-CV-633, 2021 WL 327755, at *13 (N.D. Ohio Jan. 8, 2021) ("Thus, although the ALJ deemed Dr. Todd's opinion 'persuasive,' and stated that he was rewording her recommended limitations, he was not required to include every element of all of her proposed limitations in the RFC or explain why he did not adopt all of the proposed limitations."), *report and recommendation adopted sub nom., Ephraim v. Comm'r of Soc. Sec.*, 2021 WL 325721 (N.D. Ohio Feb. 1, 2021).

While the ALJ retains a "zone of choice," he must explain why he did not include limitations assessed in contradicting medical opinions. *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x. 637, 649 (6th Cir. 2013). Social Security Ruling 96-8p provides that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." 1996 WL 374184, at *7 (July 2, 1996). An "ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

Ultimately, the Court finds that the ALJ's RFC determination was not in conflict with Dr. Martin's opinion, such that the ALJ was not required to explain why a limitation on the ability to follow and remember directions and instructions was not adopted. Critically, Dr. Martin did not

assess a specific, functional limitation on Plaintiff's ability to follow and remember instructions or directions stemming from her anxiety. *See, e.g.*, *Cartwright v. Saul*, No. 3:18-CV-244-HBG, 2019 WL 4248894, at *7 (E.D. Tenn. Sept. 6, 2019) ("Moreover, the challenged portion of Dr. Hamby's opinion allegedly not considered in the RFC determination does not include a specific functional limitation."); *Williams v. Comm'r of Soc. Sec.*, No. 1:18 CV 188, 2018 WL 6732866, at *7 (N.D. Ohio Oct. 31, 2018) ("Dr. Ranjan's statements certainly suggest some limitation, but such general statements (essentially repeating a diagnosis), 'are not specific enough for the ALJ to determine how they would translate into work related restrictions.'") (internal citation omitted), *report and recommendation adopted by*, 2019 WL 428339 (N.D. Ohio Feb. 4, 2019); *cf. Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *6 (E.D. Tenn. Mar. 11, 2021) ("Here, the ALJ failed to specifically review Plaintiff's ability to interact with her supervisors and coworkers, despite acknowledging moderate limitations in social interaction and finding persuasive the opinion of Dr. Sweeney, which included a limitation to infrequent relating with supervisors and coworkers.").

Dr. Martin noted that Plaintiff's capability in these abilities "would be impaired as noted as her anxiety." [Tr. 399]. However, Plaintiff does not challenge the ALJ's adoption of any additional limitations into the RFC determination, and the ALJ specifically stated that despite her anxiety, Plaintiff generally presented as "being alert, well oriented, having an appropriate mood and affect, no psychotic features, 'stable' insight and judgment." [Tr. 20]. The ALJ did not ignore Dr. Martin's opinion on Plaintiff's anxiety and reviewed the medical record on these potential limitations. Further, the ALJ found persuasive the opinion of nonexamining state agency consultant, Louis Perrott, Ph.D., who opined that Plaintiff had moderate limitations in interacting with others and mild limitations in the other three areas of basic mental functioning, as it was consistent with Dr. Martin's findings and the longitudinal record of Plaintiff's adaptive

functioning. [Tr. 20–21].

Therefore, the Court finds that to the extent there was an inconsistency between Dr. Martin's opinion and the RFC finding, the ALJ sufficiently explained this inconsistency through his review of the medical record with regard to Plaintiff's anxiety. As such, Plaintiff's assignments of error do not constitute a basis for remand.

## VI. CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[4] that Plaintiff's Motion for Summary Judgment [**Doc. 16**] be **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 18**] be **GRANTED**, and that the decision of the Commissioner be affirmed.

Respectfully Submitted,

Bruce Guyton

United States Magistrate Judge

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).