IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

ROBIN D. SLIGER,

    Plaintiff,

v.                                                                                                                    3:20-CV-011-JDB-HBG

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

---

ORDER ADOPTING MAGISTRATE JUDGE'S ORDER, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on objections by Plaintiff, Robin Sliger, to the Report and Recommendation issued by United States Magistrate Judge Bruce H. Guyton ("R&R"). (Docket Entry ("D.E.") 11). For the following reasons, Plaintiff's objections are **OVERRULED**, and the Court **ADOPTS** the R&R.

## I.    Background

On May 22, 2017, Sliger protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-34 et seq. (D.E. 12 at PageID 70.) Plaintiff claimed a period of disability that began on October 15, 2016. (D.E. 12 at PageID 70.) After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an administrative law judge ("ALJ"). (D.E. 12 at PageID 157-58.)

A hearing was conducted on August 30, 2018. (D.E. 12 at PageID 89-108.) On December 3, 2018, the ALJ, Suhirjahaan Morehead, found that Plaintiff was not disabled using the five-step sequential process established by the Social Security Administration ("SSA"). (D.E. 12 at

1

PageID 71-83.) The Appeals Council denied Plaintiff's request for review on November 6, 2019, which made the ALJ's decision the final decision of the Commissioner of Social Security. (D.E. 12 at PageID 60.) On January 7, 2020, Sliger filed a Complaint with this Court seeking judicial review of the final decision under Section 405(g) of the Social Security Act. (D.E. 1.) The parties filed competing dispositive motions, (D.E. 16 and 18), both of which were referred to Judge Guyton. (D.E. 20).

"Disability" under the Social Security Act means that an individual is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for h[er], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, [s]he is not disabled. 2. If claimant is not doing substantial gainful activity, h[er] impairment must be severe before [s]he can be found to be disabled. 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and h[er] impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry. 4. If claimant's impairment does not prevent h[er] from doing h[er] past relevant work, [s]he is not disabled. 5. Even if claimant's impairment does prevent h[er] from doing h[er] past relevant work, if other work exists in the national economy that accommodates h[er] residual functional capacity [("RFC")] and vocational factors (age, education, skills, etc.), [s]he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's RFC is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4) and (e), 416.920(a)(4) and (e). An RFC is the most a plaintiff can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1). The claimant bears the burden of proof for the first four steps. *Walters*, 127 F.3d at 529. At the fifth step, the burden shifts to the Commissioner who must prove that there is work available in the national economy that the individual could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

At the first step of the five-step disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 15, 2016, which is the alleged onset date. (D.E. 12 at PageID 72.) The ALJ next determined that Plaintiff's conditions that qualified as severe impairments were anxiety disorder, fibromyalgia, and arthritis. (D.E. 12 at PageID 73.) The ALJ also concluded that Plaintiff's non-severe impairments were hypertension and chronic obstructive pulmonary disease ("COPD"). (D.E. 12 at PageID 73.)

At the third step, the ALJ found that Plaintiff did not have any condition that met one of the listed impairments in 20 CFR 404.1520(d), 404.1525 or 404.1526. (D.E. 12 at PageID 73.) Turning to the fourth step, the ALJ decided that Sliger had the RFC to perform light work as defined in 20 CFR 404.1567(b) including the ability to: occasionally climb ramps or stairs; occasionally stoop, kneel, crouch or crawl; and frequently perform fine and gross manipulation with the upper extremities, bilaterally. (D.E. 12 at PageID 77-78.) In addition, the ALJ determined that Plaintiff could not climb ladders, ropes, or scaffolds due to her physical

3

limitations and that she would be unable to have contact with the general public based on her anxiety and fears. (D.E. 12 at PageID 75.)

For the fifth and final step, the ALJ held that "[Plaintiff was] capable of performing past relevant work as a driving instructor and office manager (clerical)." (D.E. 12 at PageID 80.) According to the ALJ, these types of work did not require the performance of activities restricted by her RFC. (D.E. 12 at PageID 80.) Thus, the ALJ concluded Sliger had not been under a disability, as defined by the Social Security Act, from December 22, 2015, through the date of the administrative decision. (D.E. 12 at PageID 82.) Moreover, based on Plaintiff's age, education, work experience, and RFC, the ALJ found in the alternative that there were other jobs that existed in significant numbers in the national economy that she could perform. (D.E. 12 at PageID 81.)

## II. Standard of Review

The Court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. *See* 42 U.S.C. § 405(g). The Federal Magistrates Act allows district judges to designate magistrate judges to issue "proposed findings of facts and recommendations for disposition." 28 U.S.C. § 636(b)(1)(B). The magistrate judge then files a recommendation, to which each party may object within fourteen days. *See* 28 U.S.C. § 636(b)(1)(C). Those parts of the report to which objections are raised are reviewed by the district judge de novo. *See id*. This differs from the standard applied to the Commissioner of Social Security's decision, which is reviewed to determine "whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (citations omitted).

4

Evidence that a "reasonable mind might accept as adequate to support a conclusion" is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). It is "more than a scintilla of evidence but less than a preponderance." *Rogers*, 486 F.3d at 241. Where substantial evidence supports the ALJ's decision, a court is obliged to affirm. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). A court should not attempt to resolve conflicts of evidence or questions of credibility. *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted). The district court may consider any evidence in the record, regardless of whether it was cited in the ALJ's decision. *See Mullen v. Bowen*, 800 F.2d 535, 545-46 (6th Cir. 1986).

## III. Discussion

In her objections, Sliger challenges the sufficiency of the reasons stated by the ALJ in discounting the assessment of consultative psychological examiner, Charles Martin, Ph.D. (D.E. 22 at PageID 542.) She also objects to the ALJ's determination that the opinion of her treating physician, Jenny M. Byrd, M.D., was inconsistent with the medical record. (D.E. 22 at PageID 545.)

**A. Dr. Charles Martin**

Dr. Martin, in connection with Ann M. Ramey, M.S., consultatively examined Plaintiff on January 4, 2018. (D.E. 12 at PageID 453-58.) As part of that examination, Dr. Martin performed an intake interview, a clinical interview, and a mental status examination. (D.E. 12 at PageID 453.)

Sliger reported that her mental health issues included bipolar disorder with depression and anxiety and difficulty with concentration. (D.E. 12 at PageID 454.) Dr. Martin reviewed this

5

mental health history. (D.E. 12 at PageID 454.) Additionally, Dr. Martin considered Plaintiff's background, education, work history, and reported daily activities. (D.E. 12 at PageID 455-56.)

On examination, Dr. Martin noted the following: Plaintiff's hair was somewhat disheveled; other than the first part of their interaction when she was very anxious and shaking, she made fairly good eye contact; and Plaintiff's reasoning, insight, and judgment appeared to be stable during the office visit. (D.E. 12 at PageID 456.) The examiner stated that Plaintiff's memory of the time, dates, and places for both recent and distant events appeared to be adequate. (D.E. 12 at PageID 457.) He also observed that although she initially claimed that she was anxious that she would not perform well, Plaintiff responded to all of the items on the mental status examination. (D.E. 12 at PageID 457.) Further, on that examination, Sliger was able to recall one out of three unrelated words in three to five minutes, successfully complete all four simple mathematical computations using money, correctly answer three out of the last four presidents, and was oriented to person, place, time, day, and date. (D.E. 12 at PageID 457.)

Dr. Martin diagnosed Plaintiff with bipolar disorder, type I, as well as generalized anxiety disorder. (D.E. 12 at PageID 457.) He noted that she reported a long history of depression with mood swings and a diagnosis of bipolar disorder. (D.E. 12 at PageID 457.) Plaintiff told Dr. Martin that she was receiving treatment for her depression and her bipolar disorder. (D.E. 12 at PageID 457.) Dr. Martin also recorded that Plaintiff was very anxious during the interview and that she calmed down and was cooperative in the mental status examination. (D.E. 12 at PageID 457.) Additionally, Dr. Martin assessed that commensurate with her educational history, Plaintiff's cognitive abilities appeared to be in the average to above average range. (D.E. 12 at PageID 457.) He also determined that she had a minimal work history while noting that she was hampered by social anxiety, fears, and the inability to deal with the public in general. (D.E. 12 at

6

PageID 457.) Dr. Martin detailed that Plaintiff claimed to isolate herself and to not be involved in social activities outside of her home. (D.E. 12 at PageID 457.)

The examiner indicated that Plaintiff's memory for the past on the mental status examination was excellent. (D.E. 12 at PageID 457.) He also reported that Plaintiff did not appear to have problems concentrating or focusing on the interview or examination. (D.E. 12 at PageID 457.) As such, Dr. Martin opined that Plaintiff had no difficulty understanding and remembering simple instructions and would not have any cognitive difficulty with complex ones. (D.E. 12 at PageID 458.)

Additionally, Dr. Martin found that Plaintiff did not appear to have difficulty making judgments in simple work-related decisions or complex work-related decisions with regard to cognitive abilities. (D.E. 12 at PageID 458.) However, he opined that Plaintiff had moderate difficulty interacting with the public in an appropriate manner and pointed out that she would be with supervisors and co-workers on a social as well as a work-related basis. (D.E. 12 at PageID 458.) Lastly, Dr. Martin assessed that "[f]ollowing instructions, [as well as] remembering instructions and directions would be impaired as noted by her anxiety," but that Plaintiff had "the cognitive ability to respond appropriately to usual work situations as well as changes in the routine work settings." (D.E. 12 at PageID 458.)

In the disability decision, the ALJ noted that Dr. Martin was a licensed psychologist in the area of clinical psychology who diagnosed Plaintiff with bipolar disorder type 1 and generalized anxiety disorder. (D.E. 12 at PageID 79.) The ALJ found that while the record shows that Plaintiff had anxiety issues, evidence of a bipolar disorder was self-reported. (D.E. 12 at PageID 79.) Thus, the ALJ was persuaded by Dr. Martin's opinion that Plaintiff had severe

7

Case 3:20-cv-00011-JDB-HBG   Document 23   Filed 10/19/21   Page 7 of 17   PageID #: 555

anxiety difficulties but unconvinced by his conclusion concerning the presence of bipolar disorder. (D.E. 12 at PageID 79.)

Additionally, the ALJ reviewed Dr. Martin's opinions on limitations stemming from Plaintiff's mental impairments, including that "[f]ollowing instructions, remembering instructions and direction would be impaired as noted by her anxiety." (D.E. 12 at PageID 79.) The ALJ analyzed the examiner's assessments and determined that she was "persuaded by Dr. Martin's opinion which is consistent with the record showing no long term formalized mental health treatment or inpatient hospitalizations—suggestive of a more severe mental impairment and greater limitations." (D.E. 12 at PageID 79.) She also determined that Dr. Martin's opinion is "consistent with treatment records showing that despite her anxiety disorder, the claimant generally presents as being alert, well oriented, having an appropriate mood and affect, no psychotic features, 'stable' insight and judgment." (D.E. 12 at PageID 79.) Finally, the ALJ concluded that "Dr. Martin's opinion supports the undersigned's determination that the claimant's social anxiety warrants restricting her to having no interaction with the general public as provided by the residual functional capacity assessment." (D.E. 12 at PageID 79.)

Sliger avers that if the ALJ was persuaded by the diagnosis of anxiety, the ALJ should also have been convinced by—and incorporated—Dr. Martin's opinion that Plaintiff's ability to follow instructions and remember instructions and directions would be impaired. (D.E. 22 at PageID 542-43.) Plaintiff declares that it was improper of the ALJ to find Dr. Martin's opinion convincing but provide no basis for failing to include any limitations related to following and remembering directions and instructions. (D.E. 22 at PageID 544-45.) She contends that "some limitation needed to be included in the RFC or some explanation was required as to why these

8

limitations were not included" and that "[t]he ALJ improperly quantified this limitation by not including it at all." (D.E. 22 at PageID 544.)

In the R&R, the magistrate judge concluded that "Dr. Martin did not assess a specific, functional limitation on Plaintiff's ability to follow and remember instructions stemming from her anxiety." (D.E. 21 at PageID 539-540.) (citing *Cartwright v. Saul*, No. 3:18-cv-244-HBG, 2019 WL 4248894, at *7 (E.D. Tenn. Sept. 6, 2019)). And therefore, "the ALJ's RFC determination was not in conflict with Dr. Martin's opinion, such that the ALJ was not required to explain why a limitation on the ability to follow and remember directions and instructions was not adopted." (D.E. 21 at PageID 539.)

According to Sliger, even if Dr. Martin's opinion was not specific enough, "some limitation needed to be included in the RFC or some explanation was required as to why these limitations were not included." (D.E. 22 at PageID 544.) Plaintiff also avers that "the ALJ never discounted any of Dr. Martin's limitations as vague, and therefore the Magistrate Judge's analysis regarding the specificity of Dr. Martin's opinion is an improper post hoc rationalization." (D.E. 22 at PageID 544) (citing *Harvey v. Comm'r of Soc. Sec.*, No. 16-3266, 2017 WL 4216585, at *5-7 (6th Cir. Mar. 6, 2017).

ALJs are only required to explain their reasoning for not including any limitations assessed in medical opinions if that opinion or limitation contradicts with the RFC. *See Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x. 637, 649 (6th Cir. 2013); *Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). Moreover, for an opinion about whether a claimant can perform work-related functions to be considered conflicting, the opinion must be a "specific functional limitation." *Cartwright*, 2019 WL 4248894, at *7.

Here, when addressing Plaintiff's difficulty regarding instructions and direction, Dr. Martin simply stated that "[f]ollowing instructions, remembering instructions and directions would be impaired as noted by [Plaintiff's] anxiety" while also concluding that Plaintiff had "the cognitive ability to respond appropriately to usual work situations as well as changes in the routine work settings." (D.E. 12 at PageID 458.) These vague statements do not constitute a "specific functional limitation," and therefore, the ALJ's RFC determination was not in conflict with Dr. Martin's opinion. *See Cartwright*, 2019 WL 4248894, at \*7. For example, in *Williams v. Comm'r of Soc. Sec.*, the claimant's treating physician concluded that given the claimant's anxiety, depression, and poor stress tolerance, the claimant was "seriously limited" in his ability to "work with others, complete a normal workday, accept instruction from supervisors, deal with work stress, avoid hazards, and maintain appropriate social behavior." No. 1:18 CV 188, 2018 WL 6732866, at \*7 (N.D. Ohio Oct. 31, 2018), report and recommendation adopted. Yet, the district court ruled that "such general statements" were not specific enough to constitute a work-related restriction. *Id.*

The Court also disagrees with Plaintiff's characterization of the Magistrate Judge's analysis as a post hoc rationalization (D.E. 22 at PageID 544). In *Harvey*, which Plaintiff cites, the Sixth Circuit stated that a post hoc rationalization occurs when the court provides a rationale for the ALJ's analysis that the ALJ failed to include. 2017 WL 4216585, at \*6-7. There, the ALJ concluded that the claimant was not disabled under a Listing of the Social Security Regulations. *Id*. at \*5. However, the ALJ "failed to analyze the evidence that may have supported a disability finding under [two of the listings]." *Id*. at \*5. The Sixth Circuit explained that when "assessing whether a claimant meets a Listing, the ALJ must 'actually evaluate the evidence,' compare it to the requirements of the relevant Listing, and provide an 'explained conclusion, in order to

10

facilitate meaningful judicial review.'" *Id.* (quoting *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x. 411, 416 (6th Cir. 2011)). The Sixth Circuit found that "the ALJ provided 'no analysis whatsoever' as to whether [the claimant]'s physical impairments met [the Listing at issue]." *Id.* at *6 (alterations in original).

Here, the ALJ considered Dr. Martin's opinions and analyzed whether Plaintiff's impairments qualified her as disabled, which contrasts with the ALJ's inaction in *Harvey*. (D.E. 12 at PageID 79.) The ALJ concluded that Dr. Martin's diagnosis of anxiety was supported by the record and included the limitations Dr. Martin set out that were specific and functional. (D.E. 12 at PageID 79.) Magistrate Judge Guyton did not engage in post hac rationalization by simply concluding that an ALJ does not have to proffer an explanation for a limitation that lacks specificity and is therefore not contradictory. *See Harvey*, 2017 WL 4216585, at *5-8.

For the reasons enumerated, Plaintiff's objection is **OVERRULED.**

**B. Dr. Jenny Byrd**

Next, Plaintiff challenges Magistrate Judge Guyton's conclusion that the ALJ properly considered the consistency and supportability of the medical opinions of Dr. Jenny Byrd and appropriately summarized how Dr. Byrd's opinion was inconsistent with the medical record. (D.E. 22 at PageID 545.)

Dr. Byrd treated Sliger for her pain and depression beginning on December 31, 2015. (D.E. 12 at PageID 363.) Plaintiff detailed that she was also seen by Dr. Byrd eight other occasions starting on March 29, 2016, and concluding on January 18, 2018.

On April 30, 2018, Dr. Byrd completed a medical source statement and listed Plaintiff's impairments as seronegative arthritis, fibromyalgia, chronic fatigue, recurrent major depression, and COPD. (D.E. 12 at PageID 459-61.) In the medical source statement, Dr. Byrd indicated that

11

Plaintiff could not reasonably be expected to reliably work an eight-hour day and forty-hour week without missing more than two workdays per month. (D.E. 12 at PageID 459.) Dr. Byrd also opined that Plaintiff could: sit each day for a total of six hours; stand each day for forty-five minutes total but only in five-minute increments; and walk for forty-five minutes total but also only in five-minute increments. (D.E. 12 at PageID 459.) The physician determined that Plaintiff could only occasionally lift up to five pounds due to her seronegative arthritis. (D.E. 12 at PageID 459.)

Dr. Byrd also found that Sliger could never bend, push, pull, or use her hands for gross or fine manipulation. (D.E. 12 at PageID 459.) She assessed that Plaintiff would have to take four or more unscheduled breaks per workday. (D.E. 12 at PageID 460.) Further, Dr. Byrd concluded that Plaintiff: would have environmental limitations related to humidity, temperature extremes, and vibrations; has the need to urinate so frequently that it would be impossible to fit the need to do so into normal breaks; uses the restroom an average of more than twelve times in a twenty-four-hour period; and would be expected to experience urinary incontinence at least one or more times a day. (D.E. 12 at PageID 460.) Lastly, without identifying any specific evidence, Dr. Byrd indicated that objective evidence supporting her opinions existed in her treatment notes and that her opinions were bolstered by taking a proper medical history, physical exams, and clinical observations. (D.E. 12 at PageID 461.)

The parties agree that since Plaintiff's claim was filed after March 27, 2017, the SSA's new regulations for evaluation of medical opinion evidence apply to this claim. 20 C.F.R. § 404.1520c. Under the revised regulations, the treating physician rule is abrogated as the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from [the

Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). *See Merrell v. Comm'r of Soc. Sec.*, No. 1:20-cv-769, 2021 WL 1222667, at *6 (N.D. Ohio Mar. 16, 2021) (noting that, under § 404.1520c, "[t]he ALJ [is] not required to give any specific weight or deference to [the treating physician]'s opinions").

Instead, the Commissioner would "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length, purpose, and extent of the treatment relationship, frequency of examinations, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a) and (c)(1)-(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2). Lastly, the revised regulations have set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> (1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;
> (2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be.

13

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;
> (3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 404.1520c(b)(1)-(3). Additionally, the Revised Regulations explain, "[a] prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 404.1513(a)(5).

The ALJ considered the opinions of Dr. Byrd. (D.E. 12 at PageID 80.) After misstating it as the opinion of a consultative examiner, the ALJ found that Dr. Byrd's opinion that Plaintiff suffers from seronegative arthritis, fibromyalgia, recurrent major depression, and COPD was persuasive because it was consistent with other medical records. (D.E. 12 at PageID 80.) The ALJ was not convinced, however, that these conditions were all severe because Plaintiff's depression was described as in "partial remission," "stable," and "resolved," and pulmonary testing revealed no significant findings. (D.E. 12 at PageID 80.) The ALJ did find that Plaintiff's anxiety was severe, due to her current symptoms of panic and social anxiety. (D.E. 12 at PageID 80.) But the ALJ determined that Plaintiff's COPD was non-severe, due to there being no evidence of significant limitations attributed to this condition. (D.E. 12 at PageID 80.)

Next, the ALJ noted that Sliger's "treatment records generally show that despite evidence of joint pain and fatigue . . . [her] physical examinations are generally benign." (D.E. 12 at

14

PageID 80.) Therefore, the ALJ was unpersuaded by Dr. Byrd's opinion that due to her degree of pain and fatigue, Plaintiff could not be reasonably expected to reliably attend an eight-hour day and forty-hour work week without missing two days per month as it was inconsistent with Plaintiff's longitudinal record. (D.E. 12 at PageID 80.)

Plaintiff contested the ALJ's conclusion that the Plaintiff's joint pain and fatigue was benign. (D.E. 22 at PageID 546.) More specifically, Sliger objected to the magistrate judge's finding that the ALJ properly considered Dr. Byrd's opinion when the ALJ made this determination. (D.E. 22 at PageID 545.) She also argued that the magistrate judge was incorrect in his determination that the ALJ's conclusion was properly supported by the medical record. (D.E. 22 at PageID 546.) Plaintiff asserted that the ALJ discussed the medical record generally and then deemed that record at variance with Dr. Byrd's opinion without identifying the specific part of Plaintiff's medical record that was inconsistent. (D.E. 22 at PageID 546.) And, according to Sliger, a conclusory assertion, such as this, fails to satisfy the ALJ's duty to provide an explanation for her decision. (D.E. 22 at PageID 546) (citing *Lester v. Astrue*, No. 3:08-cv-328, 2009 WL 2905921, at *8 (E.D. Tenn. Sept. 2, 2009)).

The ALJ reviewed the medical records related to Plaintiff's history of fibromyalgia and arthritis. (D.E. 12 at PageID 77.) For example, the ALJ stated that "[m]edical records document the claimant's arthritis and fibromyalgia symptoms to include swelling, left lateral sacral iliac pain, neck pain, and chronic fatigue." (D.E. 12 at PageID 77.) The ALJ determined that Plaintiff was specifically diagnosed with seronegative arthritis, which produces the chronic pain she reported. (D.E. 12 at PageID 77.) Additionally, the ALJ cited to Plaintiff's 2017 treatment records with Dr. Byrd to "show a decreased range of motion in her neck, tight trapezius muscles, thickening fingers, and diffuse tender points." (D.E. 12 at PageID 77.) The ALJ also cited to

15

Plaintiff's 2018 treatment records with Dr. Byrd which "show the claimant continues to suffer symptoms of pain, fatigue and stiffness particularly in her upper extremities." (D.E. 12 at PageID 77.)

However, "notwithstanding the severity of the claimant's physical condition," the ALJ also determined that "objective studies and physical examinations reveal no extraordinary findings that would impose significant limitations on the claimant's physical functioning, prohibitive of performing basic work activities." (D.E. 12 at PageID 77.) In support, the ALJ cited to the Plaintiff's physical examinations, the results of which were "generally benign." (D.E. 12 at PageID 77.) For example, the ALJ referred to notes from Plaintiff's 2017 treatment with Dr. Byrd noting that extremity evaluations revealed no murmur rub, gallop, clubbing, cyanosis or edema in Plaintiff's extremities. (D.E. 12 at PageID 77.) Moreover, the ALJ noted musculoskeletal examinations that were normal and nontender to palpation. (D.E. 12 at PageID 77.) The ALJ also pointed to October 3, 2016, and June 30, 2016, treatment notes with Dr. Byrd reflecting similar findings. (D.E. 12 at PageID 77.)

The ALJ determined that "despite evidence of joint pain, stiffness and fatigue, the claimant's cardiovascular examinations are normal; her extremity examinations show no clubbing, cyanosis or edema; [and] musculoskeletal examinations [are] normal and nontender to palpation." (D.E. 12 at PageID 77.) Therefore, through her analysis of the record, the ALJ concluded that even though some of "claimant's condition and symptoms [are severe] inclu[ding] upper extremity pain and stiffness, particularly in the hands, neck pain, joint pain, and fatigue," Plaintiff's medical record "supports finding that she is not prohibited from all physical activity." (D.E. 12 at PageID 77.)

The ALJ also considered the opinion of state agency medical consultant Reeta Misra, M.D., that Plaintiff should be restricted to a light exertional level. (D.E. 12 at PageID 80.) The ALJ found it was consistent with the generally normal examination findings, taking into consideration Plaintiff's joint pain and fatigue. (D.E. 12 at PageID 80.)

Ultimately, the Court finds that the ALJ properly considered the supportability and consistency of the medical opinions of record, identified specific evidence in the medical record that conflicted with Dr. Byrd's assessed disabling limitations, and explained how Dr. Byrd's opinion was not in accord with the record. Therefore, the Court finds that the ALJ's discussion of Dr. Byrd's opinion satisfied the articulation requirements under the revised regulations and that the ALJ's supportability and consistency analysis was supported by substantial evidence. For these reasons, the Plaintiff's objection is **OVERRULED**.

### IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's objections, (D.E. 22), to Magistrate Judge Guyton's order are **OVERRULED**, and the R&R of the magistrate judge, (D.E. 21), is **ADOPTED**. Accordingly, the decision of the ALJ finding that Plaintiff is not disabled under the Social Security regulations is **AFFIRMED**, (D.E. 12), Plaintiff's Motion for Summary Judgment, (D.E. 16), is **DENIED**, and Defendant's Motion for Summary Judgment, (D.E. 18), is **GRANTED**.

IT IS SO ORDERED this 19th day of October 2021.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE